Case 4:15-cv-00543-A   Document 24   Filed 04/01/16   Page 1 of 17   PageID 513



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HAJRETA CEMAN,<br> PLAINTIFF,<br><br>VS.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br> DEFENDANT. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:15-CV-543-A<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

*Pro-se* plaintiff Hajreta Ceman ("Ceman") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act ("SSA"). In June 2012, Ceman applied for DIB and SSI, alleging her disability began on May 26, 2011. (Transcript ("Tr.") 12, 83-92.) After her applications were denied initially and on reconsideration, Ceman requested a hearing before an

1

Administrative Law Judge ("ALJ"). (Tr. 12, 49-61.) The ALJ held a hearing on January 29, 2014 and issued an unfavorable decision on March 26, 2014. (Tr. 12-40.) Thereafter, on June 1, 2015, the Appeals Council denied Ceman's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-5.) Ceman subsequently filed this civil action seeking review of the ALJ's decision.

## I. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v.*

2

Case 4:15-cv-00543-A   Document 24   Filed 04/01/16   Page 3 of 17   PageID 515

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence

is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

While difficult to determine, it appears that Ceman presents the following issues in her brief:

(1) Whether the ALJ's residual functional capacity ("RFC") and Step Four determinations were supported by substantial evidence as the ALJ should have found she was disabled based on certain records in the transcript; and

(2) Whether the Appeals Council properly considered new and material evidence submitted after the ALJ's decision and erred by failing to obtain Ceman's new medical records that show Ceman's medical impairments as they currently exist.

(Plaintiff's Brief ("Pl.'s Br.") at 1-7.)

### IV.   ALJ DECISION

In his March 26, 2014 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 12-19.) The ALJ first noted that Ceman met the disability insured status requirements under Title II of the SSA through December 31, 2017. (Tr. 14.) He then stated that Ceman had not engaged in any substantial gainful activity since May 26, 2011, the alleged onset date. (*Id.*) The ALJ further found that

4

Ceman had the severe impairment of "degenerative changes to the lumbar spine status-post surgery." (Tr. 14.)

Next, the ALJ held that none of Ceman's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 15.) As to Ceman's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally stoop, kneel, crouch, or climb. She uses a cane to help ambulate.

(Tr. 15 (emphasis omitted).) The ALJ opined, based on this RFC determination and the testimony of a vocational expert ("VE"), that Ceman was able to perform her past relevant work as a dispatcher and cashier. (Tr. 18.) Consequently, the ALJ determined that Ceman was not disabled. (Tr. 19.)

## V.    DISCUSSION

### A. Substantial Evidence

Ceman appears to argue generally that the ALJ's RFC determination and Step Four determinations are not supported by substantial evidence as the ALJ should have found that she was disabled based on certain records in the transcript. (Pl.'s Br. at 3-6.) Specifically, Ceman claims, in essence, that she is not capable of working as a result of an unsuccessful fusion back surgery several years ago and the more recent discovery of a "ripped spinal cord," which has resulted in damaged nerves and "major pains everywhere" especially in her knees. (Pl.'s Br. at 3.) Ceman argues that the following evidence in the record shows that she is disabled: (1) a July 23, 2012 "Function Report—Adult" in which Ceman indicated that she was "unable to do even

5

household work, let alone do work for others" (Pl.'s Br. at 4; *see* Tr. 147); (2) Ceman's testimony at the hearing before the ALJ in which she discussed her past relevant work as a housekeeper and as a baker at a grocery store and that, as a result of her back injury, she can no longer perform such work (Pl.'s Br. at 5; *see* Tr. 27-29); (3) a Work History Report also dated July 23, 2012 that contained a list of all the jobs that she had in the past fifteen years before she became unable to work because of her impairments (Pl.'s Br. at 5; *see* Tr. 134); and (4) additional emergency room medical records from Texas Health Southwest that show she has additional health problems (Pl.'s Br. at 6; *see* Tr. 219-56).

### 1. RFC Determination

RFC is what an individual can still do despite his limitations.[1] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[2] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[2] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as fact finder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

As noted above, the ALJ found that Ceman had the RFC to perform light work[3] except she could only occasionally perform the postural activities of stooping, kneeling, crouching, or climbing, and she used a cane to ambulate. (Tr. 15.) In making his RFC determination, the ALJ considered, *inter alia*, the following evidence: (1) the testimony of Ceman at the hearing (Tr. 16); (2) medical records indicating that in September 2011 Ceman underwent a lumbar laminectomy (Tr. 16; *see* Tr. 205); (3) a February 24, 2012 emergency room visit in which Ceman complained of a sore throat and ear pain and the "attending staff noted that [Ceman] was wearing a back brace, but there was no edema or tenderness throughout her musculoskeletal system" (Tr. 16-17; *see* Tr. 237-38); (4) a May 6, 2012 emergency room visit in which Ceman complained of experiencing back pain for about two days and examination revealed Ceman's left buttock and left lumbar muscles were tender to palpation but straight leg raise was negative and there was no saddle anesthesia (Tr. 17; *see* Tr. 241-42); (5) a June 17, 2012 emergency room visit in which Ceman again complained that she had been experiencing acute, chronic back pain for one day and examination showed normal range of motion, no edema, and diffuse tenderness over the paraspinous muscles (Tr. 17; *see* Tr. 245-46); (6) a July 8, 2012 emergency room visit in which Ceman complained of chest pain and a cough and examination was essentially normal (Tr.

---

[3] Pursuant to the regulations, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

17; *see* Tr. 249-51);[4] (7) an August 15, 2012 emergency room visit in which Ceman complained of increased back pain but examination revealed her back was normal and non-tender (Tr. 17; *see* Tr. 255-56); (8) an August 27, 2012 emergency room visit in which Ceman complained of "mild" back pain and examination revealed Ceman "was tender to her lumbar spine and exhibited a positive straight leg raise" (Tr. 17; *see* Tr. 264-67); (9) a Physical Residual Functional Capacity Assessment ("PRFCA") dated September 20, 2012 in which State Agency Medical Consultant ("SAMC") Kelvin Samaratunga, M.D. ("SAMC Samaratunga"), opined that Ceman could lift and/or carry twenty pounds occasionally and ten pounds frequently, could sit, stand and/or walk about six hours in an eight-hour workday, and had the unlimited ability to push and/or pull (Tr. 18; *see* Tr. 270-77); and (10) a Case Assessment Form dated October 31, 2012 in which SAMC James Wright, M.D., affirmed SAMC Samaratunga's PRFCA as written (Tr. 18; *see* Tr. 278).

In making his RFC determination, the ALJ stated:

> I have carefully considered the claimant's subjective complaints of pain. However, the objective medical evidence of record does not fully support the claimant's allegations. Notably, I considered the claimant's lumbar spine surgery in September 2011. However, MRI findings prior to that surgery revealed only mild findings. Furthermore, the claimant did not complain of any back pain until May 2012, nearly 8 months after her surgery, and I note the claimant indicated her pain had only been present for 2 days. I find that statement supports the conclusion that her pain was adequately relieved following her surgery and had only recently flared up. Although the claimant complained of back pain in June 2012, treatment she obtained in July 2012 did not indicate any problems related to her back pain.[5] In August 2012, despite the claimant's allegations of pain, the

---

[4] In this exam, Ceman did complain of chronic back pain. (Tr. 249.) The examination revealed she was "[p]ositive for back pain" and "[n]egative for myalgias and arthralgias." (Tr. 250.)

[5] The Court notes that the ALJ's characterization of the July 2012 examination was incorrect as there were indications that she was experiencing back pain. (*See* Tr. 249-53.) However, any error is harmless as there is substantial evidence in the record that supports the ALJ's RFC determination, including the opinions of the State

attending staff specifically remarked the examination of the claimant's back was normal and non-tender, which I find raises questions regarding the severity of her alleged complaints. Moreover, later that month, the claimant characterized her pain as only "mild" in severity, which I find further erodes her credibility that her alleged back pain has resulted in severe and limiting restrictions. Accordingly, based on the lack of complaints prior to and following her surgery, the several normal examinations following her surgery, the lack of findings that correlate to her subjective complaints, and the claimant's own description of her alleged pain, I have found good cause exists to doubt the validity of the claimant's testimony and subjective complaints.

Despite the above facts, I have given the claimant the benefit of all possible doubt regarding the impact of her subjective complaints upon her functional capacity. In doing so, I have limited the claimant to a reduced range of light work, as detailed fully above. This functional capacity, particularly the requirement of a cane to ambulate, is especially generous given the cane was not prescribed by an attending source and the medical record does not show any problems with ambulation. The objective medical evidence, when viewed in the light most favorable to the claimant, does not warrant further limitations.

In accordance with SSR 96-6p, I have considered the administrative findings of fact made by the State Agency medical consultants. These opinions are weighed as statements from non-examining sources. After reviewing the objective medical evidence and credible testimony, I find that the limitations found in the above-mentioned statement are supported as detailed above. However, in giving the claimant the benefit of all possible doubt, I have additionally limited to [sic] the claimant to only occasionally stooping, kneeling, crouching, or climbing. Additionally, I found the claimant required a cane to ambulate. Accordingly, the State Agency opinions are granted great evidentiary weight in determining the claimant's functional abilities, but only insofar as they are consistent with the above residual functional capacity.

In reaching my findings as to the claimant's residual functional capacity, I considered the objective findings on the claimant's examination and the claimant's subjective complaints, as detailed above. Therefore, I found that the claimant's allegations, including her testimony, have only minimal credibility and are not credible to the extent they are inconsistent with the above residual functional capacity.

(Tr. 17-18 (internal citations omitted).)

---

Agency Medical Consultants.

Based upon the above evidence, it is clear that substantial evidence supports the ALJ's RFC determination. As noted by the ALJ, the PRFCA from SAMC Samaratunga, as affirmed by SAMC Wright, supports the ALJ's RFC determination that Ceman is capable of performing jobs that involve light work. Furthermore, while not finding all of Ceman's subjective complaints of severe back pain credible, the ALJ did take them into consideration in adding additional postural limitations to the RFC determination as well as noting Ceman needed a cane to ambulate. Contrary to Ceman's assertions, the ALJ properly analyzed the medical and other evidence in the record when making the RFC determination. (Tr. 15-18.) In addition, the ALJ properly considered the medical records from Texas Health Southwest as he referred to such records multiple times throughout his decision. *See* Tr. 15-17 (multiple references to Exhibit 3F, which are the medical records from Texas Health Southwest referenced by Ceman). While the ALJ did not include the written details of every medical record in the transcript, it is clear that the ALJ was aware of such records and considered them in making his determination. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) ("Procedural perfection in administrative proceedings is not required' as long as "the substantial rights of a party have [not] been affected."); *Black v. Colvin*, No. 2:12-CV-0233, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20, 2014) ("Case law likewise indicates an ALJ need not explain in his or her written determination all evidence contained in the record."); *Penalver v. Barnhart*, No. SA–04–CA–1107–RF, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment-he need not discuss all supporting evidence or evidence rejected.").

11

The final responsibility for the determination of an individual's RFC and the ultimate question of whether an individual is "disabled" under the Act are issues reserved to the Commissioner. *See, e.g., Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Ripley v. Charter*, 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining a claimant's RFC). In this case, the ALJ adequately explained the reasoning for his RFC determination and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that the ALJ did not err.

### 2. Step Four

The next issue is whether substantial evidence supports the ALJ's decision at Step Four. When determining at Step Four whether the claimant could perform her past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a [VE] to find that [the claimant] was able to return to her past relevant work . . . ."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony."). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the specific skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). At Step Four, the claimant bears

the burden of showing that she cannot perform her past relevant work. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "[T]he hypothetical question posed to the vocational expert by the ALJ must 'incorporate reasonably all disabilities of the claimant recognized by the ALJ.'" *Jones v. Astrue*, 228 F. App'x 403, 408 (5th Cir. 2007).

In this case, the ALJ found that Ceman was not disabled because she was capable of performing her past relevant work as a dispatcher and cashier. (Tr. 18.) The ALJ made such determination based upon the testimony of a VE at the hearing. (Tr. 18; *see* Tr. 36-40.) Because the VE's testimony provides substantial evidence to support the ALJ's finding at Step Four, the ALJ did not err and remand is not required.

As to Ceman's arguments that the ALJ failed to consider various records in the hearing relating to her past relevant work, it is clear that the ALJ considered such records as they are in the administrative record and were before the ALJ. In addition, the ALJ was clearly aware of her past relevant work as a housekeeper, baker, cashier, and dispatcher, and that she had suffered a back injury. (*See, e.g.*, Tr. 14, 16, 18; *see* Tr. 27-29, 33, 36-40.)

## B. New and Material Evidence and Obtaining New Evidence

Ceman also appears to argue that the Appeals Council did not properly consider medical evidence contained in the administrative record. Specifically, Ceman points to medical records in the administrative record regarding her back fusion surgery and post-surgery records showing "that pain kept increasing and that a 'central posterior tear at L3-L4' had occurred" (Pl.'s Br. at 5; *see* Tr. 297-338). However, contrary to Ceman's assertions, it appears that these records were submitted after the ALJ's decision but prior to the Appeals Council's June 1, 2015 decision. (*See* Tr. 1-5.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. § 404.970(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331-32 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Rodriguez*, 252 F. Supp. 2d at 332. The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010). "A court considering [the] final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee*, 2010 WL 3001904, at *7 (citing *Higginbotham II*, 163 F. App'x at 281-82).

Based on the foregoing, the issue before the Court is whether these new medical records submitted to the Appeals Council diluted the record to such an extent that the ALJ's determination became insufficiently supported. In this case, it is clear that the Appeals Council

14

clearly considered such records as it specifically listed these records in the Appeals Council "Exhibits List: and stated that it had "received additional evidence which it is making part of the record." (Tr. 5; *see* Tr. 4.) A review of these records shows that they are identical to (*compare* Tr. 205-08 *with* Tr. 310-13 and *compare* Tr. 214-16 *with* Tr. 314-16) or similar to other records considered by the ALJ as they indicate Ceman underwent lumbar fusion surgery in September 2011, engaged in physical therapy prior to and after the surgery, and continued to have some pain after the surgery. (Tr. 279-338.) Thus, the Court finds that the records submitted to the Appeals Council do not dilute the record to such an extent that the ALJ's determination became insufficiently supported. Consequently, there was no error and remand is not required.

In addition, Ceman appears to allege that the ALJ or Appeals Council had a duty to seek out additional medical records. The Court notes, however, that neither the ALJ nor the Appeals Council has a duty to collect all existing medical records. *See Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). Instead, the ALJ's duty is to develop all *relevant facts*. *Id.* In this case, the Court finds that the ALJ met such duty by reviewing the records in the record, questioning Ceman about her education, training, and past work history, the circumstances of her back injury, her other impairments, her physical limitations, and invited her to make any additional comments at the end of the hearing. *See Sun*, 793 F.3d at 509. In addition, the Appeals Council properly considered the additional medical records submitted after the ALJ's decision.

Moreover, even assuming that the ALJ did have a duty to obtain additional medical records, Ceman has failed to establish prejudice by showing she "'could and would have adduced evidence that might have altered the result.'" *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). Ceman points to

15

no non-conclusory evidence that, had the ALJ or Appeals Council obtained, would have and could have changed the result.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **April 15, 2016** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed

16

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 1, 2016.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv